LUDWIG v. AMERICAN CAR & FOUNDRY CO.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION LAW — DEPENDENCY OF WIFE LIVING APART FROM HUSBAND.
     Where claimant wife was living in Austria, had not lived with deceased for nearly two years, and it appears that he had sent her no money during that time, in the absence of testimony that they were living apart in pursuance of some arrangement by which she had a right to, and did, expect assistance, she was not entitled to compensation under the workmen's compensation law (Act

No. 10, pt. 2, § 6, Extra Session 1912, 2 Comp. Laws 1915, § 5436).[1]

2. SAME—HUSBAND AND WIFE—INFERENCES.
In the absence of testimony establishing as a matter of fact the dependency of said wife living apart from her husband, such dependency cannot be inferred, and the award of compensation by the industrial accident board is vacated and set aside.

Certiorari to Industrial Accident Board. Submitted October 3, 1916. (Docket No. 8.) Decided March 29, 1917.

Ernest Ludwig, attorney in fact of Saveta Stojkovich, presented her claim for compensation against the American Car & Foundry Company for the death of her husband in defendant's employ. From an order awarding compensation, defendant brings certiorari. Reversed.

*Angell, Bodman & Turner,* for appellant.

*Thomas A. Lawler, John F. Berry* and *Leopold Koscinski,* for appellee.

BIRD, J. While in the employ of defendant as an assistant foreman, Nicholas Stojkovich, a subject of Austria-Hungary, received an injury which caused his death in January, 1913. Ludwig, the Austrian consul, acting officially, presented a claim to the board of arbitration in behalf of the wife, Saveta. A death award was made by the committee of arbitration and afterwards approved by the board. Not content with the conclusions of the board, defendant has removed the proceedings to this court for review. Its propositions are:

[1] On workmen's compensation acts generally see extensive note in L. R. A. 1916A, 23.
As to when husband and wife are living together within the meaning of the compensation acts, see note in L. R. A. 1916A, 370.

(1) That there is no evidence that Saveta Stojkovich was dependent for support upon Nicholas Stojkovich within the meaning of Act No. 10, pt. 2, §§ 5, 6, Extra Session 1912, and that therefore no recovery can be had by her or for her.

(2) That the said Ernest Ludwig, as consul for Austria-Hungary, had no power of attorney or any authority whatsoever to act on behalf of Saveta Stojkovich and institute proceedings in this case, and had no authority by virtue of his office as consul to bring this action under the compensation act.

1. There are two ways under the compensation act in which the wife can establish her dependency and thereby her right to an award: (*a*) By showing that she is the wife of the injured party, and that she was living with him at the date of the accident; (*b*) by showing facts from which her dependency upon the injured party at the date of the accident may be inferred. Part 2, § 6, Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5436).

(*a*) Under the first method suggested, when she shows that she was the wife of the injured party and was living with him at the date of the accident, she has made her case, and the law will then conclusively presume that she was dependent upon him. In the present case it sufficiently appears that Saveta was the wife of the injured party, but it does not satisfactorily appear that she was living with him at the time he was injured. The record discloses that after being in this country for a time Nicholas returned to Austria-Hungary and married Saveta, took her to his father's home, and lived with her for three or four months, when he returned to this country without her, and that he was not injured for nearly two years thereafter. It appears that he sent her no money after returning to this country, and that she never came to this country. The young brother of Nicholas testified that:

"His brother said that he is going to take him along to Detroit and get him a job in the same shop, where

he used to be a foreman, and then when they have enough money together then they going to get their family over here."

Further than this their relations do not appear, although it is intimated by the testimony of one witness that Saveta remarried after Nicholas came away. It, therefore, appears from the testimony that Saveta was not actually living with Nicholas at the date of the accident, and had not since he returned to this country, and there is not enough in the testimony to furnish a fair inference that she was living apart from him in pursuance of some arrangement by which she had a right to, and did, expect assistance from him. *Finn* v. *Railway*, 190 Mich. 112 (155 N. W. 721), L. R. A. 1916C, 1142) ; *Roberts* v. *Whaley*, 192 Mich. 133 (158 N. W. 209).

(*b*) We are likewise of the opinion that there was no testimony to establish the dependency of Saveta as a matter of fact. The record fails to disclose that Nicholas ever supported her, either in Austria-Hungary or in the United States. The brother testified that Nicholas was married to Saveta and took her to his father's home where they lived until he returned to this country. The record fails to disclose whether she continued to live with the father after Nicholas came away, but it does show that he sent her no money after returning to this country. Much importance is placed upon the brother's statement that they were going to save their money, and when they had sufficient, they were going to bring their family to this country. The word "family," as used by him in this connection, might or might not have included Saveta. The inference is that even this resolution was abandoned, as it would not have required nearly two years for an assistant foreman of defendant company, together with what the brother could earn, to accumulate funds sufficient to bring his wife and father's family from Austria-Hungary, and

this is especially true since the transportation usually purchased by that class of travelers is of the less expensive kind.

We have been somewhat liberal in dealing with this class of cases in accordance with the spirit of the compensation act, but we cannot approve a finding which is not supported by at least a reasonable inference from the testimony. The record fails to establish her right to the award under either theory, and the conclusion of the board of arbitration must be set aside and vacated. In view of this conclusion it will be unnecessary to consider the other question raised by counsel.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.