McGARRY et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4163.    Decided January 21, 1925.    (232 Pac. 1090.)

1. MASTER AND SERVANT—INDUSTRIAL COMMISSION CANNOT TAKE TESTIMONY OUTSIDE STATE OVER OBJECTIONS. Industrial Commission cannot hear evidence in another state over employer's objection, in view of Comp. Laws 1917, §§ 3081, 7163-7177.

2. MASTER AND SERVANT—JUDGMENT SETTING ASIDE AWARD DOES NOT AFFECT COMMISSION'S JURISDICTION TO REOPEN CASE. Although Comp. Laws 1917, § 3148, as amended by Laws 1919, c. 63, § 1, requires Supreme Court either to affirm or set aside award of Industrial Commission, judgment setting aside award does not prohibit commission from reopening case, nor affect its jurisdiction except as limited by Supreme Court's decision.[1]

3. MASTER AND SERVANT—INFANT "DEPENDENT" OF FATHER ABANDONING IT, THOUGH NOT RECEIVING OR PROMISED SUPPORT. Mere infant, incapable of supporting himself and not competent to claim or waive legal right is actual dependent of father abandoning him within Industrial Act, though he has not received or had promise of support.[2]

[1] Salt Lake City v. Industrial Commission, 61 Utah, 514, 215 P. 1047, distinguished.

[2] McGarry v. Industrial Commission, 63 Utah, 81, 222 P. 592, cited; Utah Apex Min. Co. v. Industrial Commission, 64 Utah, ——, 228 P. 1078, distinguished.

---

Certiorari

---

4. MASTER AND SERVANT—CHILD SUPPORTED BY MOTHER SUSTAINED
   LOSS IN FATHER'S DEATH IN AMOUNT DEPENDENT ON MOTHER'S
   ABILITY TO CONTRIBUTE. Child of divorced parents, in custody
   of mother, to the extent of mother's inability to support it,
   sustained loss in death of father, although divorce decree im-
   posed upon mother the duty of maintenance.

Proceeding by W. C. McGarry and others to review an
order of the Industrial Commission of Utah, awarding com-
pensation to John Calvin Bradley, for the death of Delos
Bradley, employee.

AWARD ANNULLED and set aside.

*Booth, Lee, Badger, Rich & Rich,* of Salt Lake City, for
plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst.
Atty. Gen., for defendants.

THURMAN, J.

Plaintiffs seek by this proceeding to review an order of the
Utah Industrial Commission, defendant herein, awarding
compensation to John Calvin Bradley, a minor.. Compensa-
tion was awarded to the minor as a dependent of his father,
Delos Bradley, who died as a result of an accidental injury
in the course of his employment at Park City, Utah, October
21, 1922. The plaintiff, Kopp & McGarry Company was the
employer of deceased at the time of his death and plaintiff
United States Fidelity & Guaranty Company carried the
insurance. There is no dispute as to the jurisdictional facts
above stated.

This is the second time this case has been before the court.
The decision rendered upon the former hearing is reported

See (1) Workmens' Compensation Acts, p. 115 (1926 Anno);
(2) Workmens' Compensation Acts, p. 125; (3) Workmens' Com-
pensation Acts, p. 57; (4) Workmens' Compensation Acts, p. 62
(1926 Anno).

in 63 Utah, 81, 222 P. 592, to which reference is made for a detailed statement of the case as it was then presented to the court. For convenience of the reader, we briefly summarize certain material matters reported in the decision necessary to be understood in this connection.

Alice Baker Bradley, the mother of the minor and his duly appointed guardian, and Delos Bradley, the deceased, intermarried at Blackfoot, Idaho, July 3, 1914. John Calvin Bradley, sole issue of said marriage, was born in June, 1915. The deceased supported his wife and child for a period of about six months, after which he furnished no support whatever. In November, 1919, upon application of the wife, the Idaho court granted her a divorce and the custody and maintenance of the child. About that time Delos Bradley, left Idaho for parts unknown to his wife and assumed the name of "Jack Wilson," by which name he was known to his employer. His whereabouts from the time he left Idaho was unknown to his wife until she heard of his death. Shortly afterwards, as guardian, she applied to the defendant Commission for compensation under the Utah Industrial Act on behalf of her child. The Commission found the child was wholly dependent, and awarded compensation accordingly. Upon reviewing the case this court came to the conclusion that as the facts were insufficient to justify an award for total dependency, the Commission must have made the award upon the theory that dependency was conclusively presumed, as provided in Comp. Laws Utah 1917, § 3140, par. 5, subd. a, as amended in Sess. Laws 1919, at page 164. Consequently, the court held the award could not be sustained and nullified and set it aside. The court, however, in its opinion, suggested that further evidence might establish a dependency under the last provision of the section referred to which reads:

"In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury."

As the opinion states at some length the reason for the suggestion made by the court, further review of it is unneecssary in this connection.

After the decision was handed down, the Commission, by resolution reopened the case for the taking of further evidence and gave the plaintiffs herein notice thereof. Plaintiffs entered seasonable objection to the jurisdiction of the Commission in view of the decision of this court, but the objection was overruled, after which the Commission proceeded to hear the evidence in the state of Idaho, to which proceeding plaintiffs also objected. The evidence so taken, among other things, tended to show that the minor was and had been in more or less destitute circumstances; that its mother had been unable to support herself and the child, and that she had been compelled to obtain substantial assistance from the county for the child's support. Upon this evidence, which was not contradicted, together with the evidence taken at the former hearing, the Commission again found that the minor was wholly dependent and awarded compensation accordingly. An application for rehearing was denied and the case is before us again for review.

Plaintiffs present the following issues to be determined:

"1. The Industrial Commission was without jurisdiction to reopen the case and grant a rehearing or a hearing de novo, to take further testimony, after its original award had been set aside and annulled by the Supreme Court.

"2. The Industrial Commission had no jurisdiction or right to hold a hearing and take testimony beyond the territorial boundaries of the state of Utah and therefore all proceedings had at Blackfoot, Idaho, over the objection of plaintiffs, were all void.

"3. It is not shown from the record that at the time of the death of the deceased the minor child was wholly dependent upon the deceased for its support and maintenance. Plaintiffs contended that it affirmatively appears from the evidence and the entire record, that at the time of the death of the deceased the minor child was neither wholly nor partially dependent upon the deceased for its support and maintenance within the meaning of the Workmen's Compensation Act, and that there is not sufficient evidence to support the award of the Commission, independently of the irregularity of the proceedings in the state of Idaho."

For convenience we shall first consider the second objection, as it can be disposed of without extended discussion. The Commission had no power to hear the evidence in Idaho against plaintiffs' objection. Comp. Laws Utah 1917,

§ 3081, provides how evidence may be taken in a for-
foreign jurisdiction in cases arising under the Indus-
trial Act. That section reads:

"The Commission or any party may in any investigation cause
depositions of witnesses residing within or without the state to be
taken as in civil actions."

Comp. Laws Utah, 1917, §§ 7163 to 7177, inclusive, pre-
scribes the method in civil actions and is exclusive as far
as the authority of the Commission is concerned. The taking
of testimony in the state of Idaho, in the manner complained
of, was beyond the jurisdiction of the Commission, and there
being no other evidence sufficient to sustain the award, it
follows that the award should be annulled and set aside. It
is necessary, however, to determine the other questions pre-
sented.

The first objection in the order above quoted proceeds upon
the theory that whenever an award of the Commission is
annulled by this court on review, the jurisdiction of the Com-
mission for all purposes is exhausted. The statute (Comp.
Laws Utah 1917, § 3148, as amended in Laws Utah 1919, at
pages 164 and 165), in cases of review, provides that upon
the hearing by the court "the court shall enter judgment
either affirming or setting aside the award."

The statute should be given a reasonable interpretation. If
the interpretation of plaintiffs is correct, it might lead to
absurd, and, oftentimes, lamentable results. Let us take the
instant case, for example, and eliminate every objection
made by plaintiffs except the one we have just decided,
in which we have held the award should be annulled
and set aside because the Commission was without authority
to hear the evidence in Idaho. That being the only objection,
the result would be the Commission would be powerless to
hear further evidence even within the state of Utah, in
which it has undoubted jurisdiction. It might be a case of
unquestioned dependency and extreme hardship, but justice
would fail because the Commission made an honest mistake
as to the extent of its jurisdiction. It is hardly to be pre-
sumed that such an interpretation of the statute fairly re-

flects the intention of the Legislature. It is more probable that the Legislature contemplated that if the Commission, by mistake in a given case, should exceed its jurisdiction and its award be annulled on that account it should not be ousted of its jurisdiction altogether, but be permitted to proceed in the determination of the rights of the parties, observing, however, any limitations imposed by the court which annulled the award. There is nothing whatever in the Utah Industrial Act from which it can be logically inferred that the annulment of an award by the Supreme Court for specific reasons set forth in its opinion ousts the Commission of its jurisdiction of the case for purposes otherwise just and lawful. We are therefore not prevented by anything found in the statute from giving it such an interpretation as will avoid results which the Legislature evidently could not have intended.

It is possible that plaintiffs may feel that the example we have given is unfair because it involves only a technical error of the Commission in which the merits of the case were not involved. Let us suppose a case in which the merits are involved and in which the Commission finds that the applicant, under the evidence, is *not* entitled to compensation. The applicant brings the case before this court for review. The court finds as matter of law, that all the evidence is in favor of the applicant and that he *is justly entitled* to compensation. For that reason the court annuls the award and sets it aside, which is all it can do under the law. What then becomes of the case? If the Commission's jurisdiction of the case is exhausted so that nothing further can be done in favor of the applicant, the decision of this court, favorable to the applicant, would itself be a nullity as far as practical results are concerned. Such an interpretation of the statute, in our opinion, is not only wrong, but a serious reflection upon the intelligence of the Legislature which enacted the law.

The interpretation contended for by plaintiff does not insure even-handed justice. It always inures to the benefit of the employer and his insurer and against the applicant. If the Commission denies compensation, that is all the employer and insurer can ask. If the Commission allows compensation

and this court sets the award aside, that ends the case against the applicant; and, finally, if the Commission denies compensation and this court sets the award aside because compensation should have been allowed, the applicant gets nothing. We are firm in our conviction that the Legislature of this state intended no such unreasonable and arbitrary discrimination against the poor unfortunates whom the law was manifestly intended to benefit rather than to place at a disadvantage.

Plaintiffs invoke and rely upon the doctrine of res adjudicata and cite the following cases. *Centralia Coal Co.* v. *Ind. Comm. et al.*, 297 Ill. 451, 130 N. E. 727; *Harris* v. *Castile Mining Co.*, 222 Mich. 709, 193 N. W. 855; *Estate of P. D. Beckwith, Inc., et al.* v. *Spooner*, 183 Mich. 323, 149 N. W. 971, Ann. Cas. 1916E, 886; *Choctaw Portland Cement Co.* v. *Lamb*, 79 Okl. 109, 189 P. 750.

In the Centralia Coal Co. Case, supra, the second headnote states the doctrine enunciated in that case:

"Where Industrial Commission's decision refusing injured employee compensation became final on failure to bring it up for review by the court, the Commission had no jurisdiction, by subsequent hearing, to review and set aside the decision; the previous decision being res judicata."

The principle enunciated in the above quotation was recognized by this court in *Salt Lake City* v. *Ind. Comm.*, 61 Utah, 514, 215 P. 1047. It was there held that the Commission had no jurisdiction to entertain a new petition for compensation after denial thereof on a former petition, and where the applicant had not applied to this court to review the award, as provided by law. We have no fault to find with the *Centralia Coal Co. Case*, but fail to see what application it has to the question presented here. Nor do the other cases cited shed any light upon the question submitted for our determination in view of our interpretation of the law, which limits the power of this court on review to either affirm or set aside an award.

We are forced to the conclusion that in order to give the statute any practical and beneficial effect, a judgment by this court on review, setting aside an award does not affect the

jurisdiction of the Commission except as limited by the decision of the court. Such interpretation of the statute is clearly necessary in order to reflect the evident intention of the Legislature. It may be that such interpretation will tend in some instances to prolong litigation, but it is far more just to prolong litigation in a case now and then than it 'is to violate the manifest spirit and purpose of the law.

This brings us to a consideration of the third and last contention made by the plaintiff. This contention goes to the merits of the case. It is strenuously contended by plaintiffs that brushing aside the irregularities complained of in the preceding objections there is, nevertheless, no dependency established either wholly or in part under the Industrial Act. This feature of the case was given consideration in our former opinion (63 Utah, 81, 222 P. 592) to which reference has been made, and it would be an unnecessary burden involving useless expense to the state to again state our views at any considerable length. The gist of plaintiffs' contention seems, to be that there is no dependency, wholly, or in part, because it is not shown in the evidence that the deceased furnished or promised any support to the minor down to within a recent date. In our former opinion we cited many authorities strongly tending to hold that the furnishing of support was not a necessary factor in determining actual dependency, but that it is a competent fact and in most cases is generally made to appear. For the convenience of the reader we cite without comment the cases supporting our conclusions in the opinion referred to. *Merrill* v. *Penasco Lumber Co.*, 27 N. M. 632, 204 P. 72; 1 Honnold on Workmen's Compensation, § 82; *Young* v. *Niddrie & Benhar Coal Co., Ltd.*, 6 B. W. C. C. 774; also see 1 B. W. C. C. 332.

As stated in the opinion:

"We have found no American cases as nearly analogous to the instant case as are the English cases above cited. Neither have we found any American case which contravenes the doctrine of the English cases."

Our decision upon review of the first award was primarily based upon the fact that there was nothing to show that the

applicant was in needy circumstances or that his mother who had obtained a divorce from her husband, was not abundantly able to support herself and the child. In other words, there was nothing to show that the child was actually dependent upon any one, unless it might be his mother, for support and maintenance. It is now made to appear that the child had no means of its own; that its mother was unable to support it entirely and she was compelled to obtain assistance from the county to the extent of many hundreds of dollars. The child was only 3 or 4 years of age at the most when its father entirely abandoned it and its mother. Human experience teaches us that a child of that age, or even of the age it is now, is practically helpless, and lexicographers of the English language generally give to the word ''dependent'' a definition which covers and includes a helpless infant. The Industrial Act of Utah does not state the circumstances and conditions under which an actual dependency may be established. It does not make actual dependency depend upon some support furnished the applicant by deceased down to a recent date, nor has any respectable authority had the temerity to so interpret industrial acts unless the act itself prescribes such limitation, as in most of the states of the Union. See Hill-Wilkin, Workmen's Compensation Statute Law, 1923.

We are inclined to the views intimated in our former opinion, that where a mere infant, incapable of supporting itself and not competent either to claim or waive a right under the law, is abandoned by its father, whose duty under the law during his life was to support the child, such child, upon his father's death, within the purview of the Utah Industrial Act, becomes an actual dependent without regard to the question as to whether he has received or had the promise of support. Whether such child is wholly or partially dependent, of course, depends upon the facts of the particular case.

This case is clearly distinguishable from the case of *Utah Apex Min. Co.* v. *Ind. Comm.*, 64 Utah —, 228 P. 1078. In that case the applicant wife was voluntarily living apart from her husband, the deceased, at the time of his death. He had

not contributed to her support for a period of about 5 years
next preceding the date of his death. During a portion of
said time he was in the state (Montana) where his wife lived,
but during most of the time, especially the last 27 months of
the period, she did not know his whereabouts until she re-
ceived a report of his death. She was in needy circumstances
the most of the time, but never applied to her husband for
support or sought to compel the same. In fact when upon
the witness stand at the hearing before the Commission, she
was asked if her condition was such that had she known of
her husband's whereabouts would she have required that
he support her, she answered, "No." The next question
was: "Were you in need of financial assistance?" She an-
swered, "Yes, sir." She was then asked: "Did you know
that your husband was legally bound to support you?" She
answered, "Yes"; and later stated that the reason she would
not have exacted support was because of the treatment of the
family. Dependency under the statute could not be presumed
as matter of law because they were not living together and
the evidence was held by this court, on review, insufficient to
establish a dependency in fact. Consequently, the award
made in her favor was set aside. The applicant in that case
was *sui juris* and presumably competent to claim and enforce
her legal rights. The court, in its opinion in that case, in
commenting upon the effect of her testimony, at page 1080 of
the report, said:

"It seems to have been a clear case of voluntary living apart
and complete acquiescence, not only as relates to their separation,
but also the husband's failure to furnish her means of subsistence."

Mr. Justice Gideon, now Chief Justice, in a brief concur-
ring opinion, tersely states his reasons for concurring, which
undoubtedly were the reasons in part of the entire court. At
page 1081 he says:

"I concur in the order annulling the award. I base such a con-
currence on the mental attitude of the widow of the deceased, as
appears from her testimony. She testified that she did not receive
any support from the deceased; that she had made no effort to
obtain support; would not have exacted it if she had known his
whereabouts; and did not expect the deceased to support her."

It is clearly deducible from the majority opinion also that if it had not been for the fact that applicant was voluntarily living apart from her husband, together with her mental attitude as stated in the concurring opinion, the award of the Commission would not have been annulled by this court, notwithstanding she had neither received support nor promise of support from the husband for a period of more than 5 years next preceding his death.

In that case the former opinion of the court in the instant case was referred to and relied on as grounds for annulling the award, but the court, in its opinion, briefly distinguishes the cases in the manner we have endeavored to distinguish them here.   In the last case the general rule that there should be same support or promise of support is elaborated to some extent and reference made to authorities strongly supporting the rule.   We frankly admit that the rule we invoke in the instant case is an exception to the general rule, but it is because of the exceptional circumstances attending the case.   To hold that a mere infant, only 7 years of age when it makes its application, is not a dependent because it did not take some steps to enforce its father's legal duty in his lifetime or because its father did not contribute or promise to contribute to its support down to within a recent date, where there is no positive law making such element an essential factor in such a case, is well-nigh shocking to the judicial conscience.   The fact that the mother of the child may have had the opportunity to attempt the enforcement of the father's duty when she knew of his whereabouts during the first 4 years of the child's life and failed to do so certainly should not be assigned as a reason for annulling the award allowing the child compensation.   Counsel for plaintiff, in their able brief admit in effect that this is a case of unusual hardship, and vigorously excoriate the father for his shameful neglect, for which they intimate he should have been condemned and incarcerated as a common criminal.   In other words, the conduct of the father was such as to call for the bitterest anathemas of plaintiff's counsel, notwithstanding which they strenuously insist the case should be determined

under the general rule rather than be made an exception thereto.

Before concluding this opinion there is a further question that should be given brief attention. It appears from the evidence taken at the subsequent hearing before the Commission that personal service was acquired upon the deceased Delos Bradley in the divorce proceeding, and that the plaintiff, in her complaint in said cause, prayed for the custody and maintenance of the child. Her prayer was granted and the decree of the court imposed upon her the duty of maintaining the child. It appears that she discharged the obligation to the extent of her ability, but was physically unable to fully comply with the decree and was compelled to call upon the county for assistance. The county complied with her request and has made substantial contributions for the child's support. It cannot be contended that such contributions by the county was a primary duty. The primary duty rested upon the parents and to the extent that the mother was unable to support the child, after providing herself with adequate support, the child sustained a distinct loss in the death of its father. The amount of the loss, being dependent upon the amount the mother is able to contribute, is a matter within the jurisdiction of the Commission to determine in accordance with the facts. The court is of opinion that this feature of the case should have been given consideration by the Commission in determining the nature and extent of the dependency.

For the reason that the Commission exceeded its jurisdiction in taking and hearing the evidence in the state of Idaho, the award is annulled and set aside.

GIDEON, C. J., and CHERRY, J., concur.

FRICK, J. I concur both in the reasoning and conclusion of Mr. Justice THURMAN. In view of the importance and far-reaching effect of the decision, however, I feel constrained to add a few words in explanation of my concurrence.

Ordinarily, one who, under the Industrial Act, seeks to be

compensated for the death of another, must show that he
was dependent upon the deceased at the time of the injury
which causes death, and that he by such death has been de-
prived of something which the deceased had contributed to
his support and maintenance during the life time of the de-
ceased. The purpose of the Industrial Act is to provide com-
pensation of a material, that is, a monetary kind, as distin-
guished from compensation for other losses. If, therefore,
the deceased has contributed nothing to the applicant during
the lifetime of the deceased, the applicant has suffered no
loss and hence no compensation can or ought to be made.
In the case of infants, however, or other children who are
"physically or mentally incapacitated," from earning wages,
the general rule above stated cannot and does not apply.

In my judgment all that an infant or other offspring, who
is physically or mentally incapacitated from earning wages,
is required to prove is the relationship he sustains to the de-
ceased, and that he has no other means of support. Where
such is the fact, the case, as pointed out by Mr. Justice
THURMAN, constitutes an exception to the general rule, and
the dependent infant need not prove that the parent actually
contributed to his support at the time of the latter's death.
Under such circumstances in my judgment the legal duty of
the parent and the actual and existing necessities of the in-
fant are sufficient to entitle the latter to compensation under
the Industrial Act.

Ordinarily therefore an infant of tender years, like the
applicant in the instant case, can be presumed to be wholly
dependent upon the parent. For the reason, however, that
the custody, nurture, and control of the infant applicant in
this case was awarded to the mother by a court of competent
jurisdiction, before the death of the father, that presumption
cannot prevail. The question of dependency, as pointed out
by my associate, is therefore one of fact to be determined by
the Commission upon competent evidence being submitted
to it.

The term of office of Hon. A. J. WEBER, who was Chief
Justice, expired before disposition of this cause.